JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Alicia Phillip

**(b)** County of Residence of First Listed Plaintiff __Camden County__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lauren C. Bateman, Esq., Console Mattiacci Law,
110 Marter Ave., Suite 502; Moorestown, NJ 08057
856-854-4000

## DEFENDANTS

JEVS Human Services

County of Residence of First Listed Defendant __Philadelphia County__
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **OTHER STATUTES (cont.)** |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[x] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609<br><br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.; 42 U.S.C. § 12101, et seq.; 29 U.S.C. §2601, et seq.; N.J.S.A. § 10:5-1, et seq.

Brief description of cause:
Defendant discriminated and retaliated against Plaintiff because of her sex, pregnancy, disabilities, and seeking reasonable accommodations.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
10/13/2023

SIGNATURE OF ATTORNEY OF RECORD
*Lauren C. Bateman*

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|                              |     |                     |
|------------------------------|-----|---------------------|
| **ALICIA PHILLIP**           | :   |                     |
| **Clementon, NJ 08021**      | :   | **CIVIL ACTION NO.** |
|                              | :   |                     |
| **Plaintiff**                | :   |                     |
|                              | :   |                     |
| **v.**                       | :   |                     |
|                              | :   |                     |
| **JEVS HUMAN SERVICES**      | :   | **JURY TRIAL DEMAND** |
| **1845 Walnut Street, 7th Floor** | : |                   |
| **Philadelphia, PA 19103**   | :   |                     |
|                              | :   |                     |
| **Defendant.**               | :   |                     |

## CIVIL ACTION COMPLAINT

### I.      INTRODUCTION

Alicia Phillip ("Plaintiff") brings this action against her former employer, JEVS Human Services ("Defendant"). Defendant discriminated against Plaintiff, including by subjecting her to a hostile work environment, because of her sex (female), her pregnancy, and her disability(ies), and retaliated against Plaintiff for engaging in protected activity by way of seeking reasonable accommodations for her pregnancy and disability(ies). Plaintiff now brings her claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"); the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA"); the Family Medical Leave Act, 29 U.S.C. §2601, *et seq*. ("FMLA"); and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq*. ("NJLAD"). Plaintiff seeks all damages allowable by law, including back-pay, front-pay, compensatory damages, punitive damages, liquidated damages, attorney's fees and costs, and all other relief that this Court deems appropriate.

## II.   PARTIES

1.   Plaintiff, Alicia Phillip, is an individual and resident of the State of New Jersey residing therein in Clementon, New Jersey.

2.   Plaintiff is female.

3.   Defendant JEVS Human Services is a Pennsylvania corporation with a principal place of business located at 1845 Walnut Street, 7th Floor, Philadelphia, PA 19103.

4.   Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5.   At all relevant times, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

6.   At all relevant times, Plaintiff worked remotely from her home in New Jersey.

7.   At all relevant times, Defendant was an employer of Plaintiff within the meaning of the statutes that form the basis of this matter.

8.   At all relevant times, Defendant employed more than fifty (50) people.

9.   At all relevant times, Defendant acted by and through its authorized agents, servants, workmen, and/or employees within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

## III.   JURISDICTION AND VENUE

10.   The causes of action which form the basis of this matter arise under Title VII, the ADA, the FMLA, and the NJLAD.

11.   The District Court has subject matter jurisdiction over Counts I (Title VII), II (ADA), and III (FMLA) pursuant to 28 U.S.C. § 1331.

12.   The District Court has supplemental jurisdiction over Count IV (NJLAD) pursuant

2

to 28 U.S.C. § 1367.

13.     The District Court has jurisdiction over all Counts (I-IV) pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and as there is complete diversity of citizenship as Plaintiff is a citizen of New Jersey and Defendant is a citizen of Pennsylvania.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b).

15.     On or about November 10, 2022, Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of the various acts of discrimination and retaliation set forth herein.

16.     On or about November 18, 2022, Plaintiff filed an Amended Charge of Discrimination with the PHRC.

17.     Plaintiff's Charges of Discrimination were cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibits "1" and "2" are true and correct copies of the Original and Amended Charges of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

18.     On or about July 17, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue for the above Charge. Attached hereto and marked as Exhibit "3" is a true and correct copy of the Notice (with personal identifying information redacted).

19.     Plaintiff has fully complied with all administrative pre-requisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

20.     Plaintiff began working at Defendant on or about August 3, 2014.

21.     Plaintiff was hired into the position of County Assistance Office ("CAO") Liaison.

22.     About one (1) year later, Plaintiff was promoted to the position of Projects Coordinator.

23.     Plaintiff consistently performed her job duties in a highly competent manner.

24.     Plaintiff last reported to Annette Silva, Quality Assurance Director.

25.     Silva reported to Luis Gonzalez, Work Ready Director.

26.     Gonzalez reported to Nicki Woods, Executive Director.

27.     On or about December 18, 2021, Plaintiff learned that she was pregnant and due on August 17, 2022.

28.     On January 26, 2022, Plaintiff submitted a doctor's note to Silva that stated that Plaintiff was eleven (11) weeks pregnant and had an estimated delivery date of August 17, 2022.

29.     On March 2, 2022, in an email to Sue Highsmith, Senior Human Resources Manager, titled "ADA Accommodations Request," Plaintiff requested the paperwork that she needed to complete and submit to request an accommodation for her pregnancy and disability, as Plaintiff was experiencing medical issues related to same.

30.     In her email, Plaintiff stated that she had been told to use her approved intermittent FMLA leave to take off time as needed due to her pregnancy and disability until her accommodation request to work remotely was approved.

31.     On March 17, 2022, in a phone call with Nicole Clark, FMLA Human Resources Manager, she told Plaintiff that the FMLA forms submitted by her therapist were not accessible in the format provided, and that Plaintiff had until March 21, 2022 to submit her FMLA forms in an accessible format.

32.     When Plaintiff again asked to be provided with the accommodation paperwork,

4

Clark stated that she was unaware of Plaintiff's prior request to Highsmith.

33.    On March 17, 2022, following the above, Plaintiff forwarded to Clark her above March 2, 2022 email to Highsmith.

34.    In a phone call later that same day, Highsmith apologized for neglecting to respond to Plaintiff's March 2, 2022 email requesting accommodation paperwork.

35.    During the call, Plaintiff again asked Highsmith to be permitted to work remotely as an accommodation for her pregnancy and medical condition.

36.    In response, Highsmith stated that Defendant was not a remote working company.

37.    On March 18, 2022, following the above phone call, Plaintiff sent an email to Highsmith, copying Silva and Mary Mehler, then-Program Director, in which she attached her doctor's note requesting the reasonable accommodation of working from home full time instead of three (3) days from home and two (2) days from the office, due to her pregnancy and sarcoidosis, a serious medical condition that affects the immune system.

38.    Plaintiff further stated that she had sent the requested accommodation request paperwork to her doctor for completion and that she was working with her doctor to have everything submitted to Defendant.

39.    While Plaintiff's reasonable accommodation request was pending, she continued to work remotely on Mondays, Wednesdays, and Fridays, and was approved for intermittent FMLA leave on Tuesdays and Thursdays, the days she was scheduled to report to work in the office.

40.    On March 25, 2022, Plaintiff went out of work on an approved continuous FMLA medical leave of absence in connection with her pregnancy- and disability-related medical issues.

41.    Plaintiff's FMLA forms stated that she was diagnosed with depression and was suffering from symptoms including suicidal ideations, anxiety, panic attacks, hopelessness, and

5

poor functioning.

42.    Plaintiff was scheduled to return to work on June 5, 2022.

43.    On June 2, 2022, in an email to Silva, Mehler, Highsmith, and Clark, Plaintiff submitted a doctor's note clearing her to return to work with the request to work remotely full time as a reasonable accommodation for her pregnancy and disability.

44.    Plaintiff was able to do her job remotely.

45.    On June 3, 2022, following the above, Silva sent Plaintiff a text message and instructed her to email her doctor's note to Defendant's FMLA Administrator.

46.    On June 3, 2022, following the above, Plaintiff forwarded her above doctor's note to the FMLA Administrator.

47.    On June 6, 2022, Plaintiff clocked into work remotely, as was her usual practice for a Monday.

48.    On June 6, 2022, following the above, Plaintiff was called into a virtual meeting with Silva and Highsmith.

49.    Silva and Highsmith stated that, because Plaintiff doctor's note requested that she work remotely full time, Plaintiff was not allowed to work at all until her request was approved, and that she needed to go back on an unpaid leave of absence.

50.    Silva and Highsmith stated, however, that since Plaintiff had already worked half a day that day, Plaintiff should continue working the rest of the day and begin her unpaid leave the next day.

51.    Highsmith indicated that Plaintiff's accommodation request would not be approved.

52.    In response, Plaintiff stated that she was already scheduled to work remotely on

6

Mondays, Wednesdays, and Fridays, and that she was only scheduled to work in the office on Tuesdays and Thursdays.

53.   Plaintiff stated that her accommodation request was to work remotely on Tuesdays and Thursdays, in addition to her regularly scheduled Mondays, Wednesdays, and Fridays, due to her pregnancy and medical conditions.

54.   Highsmith told Plaintiff that she was "too emotional," referenced her pregnancy and medical conditions, and stated that the meeting would be continued at a later date.

55.   On June 7, 2022, after Plaintiff clocked in and began working, Silva called Plaintiff and instructed her to clock out immediately, as her accommodation request had not been approved.

56.   In a phone call later morning, Clark told Plaintiff that she had received her doctor's note but that the note did not state that Plaintiff was cleared to return to work without restrictions, so her accommodation request was denied.

57.   Clark asked if Plaintiff had read her doctor's note and stated that she would fax the accommodation paperwork to Plaintiff doctor's office.

58.   On June 7, 2022, Highsmith emailed Plaintiff and stated: "As a follow up to our communication yesterday, please be advised that I contacted Nicole Clark, FMLA Administrator and requested a connection with you regarding the doctors note that was submitted 6/2/2022. I've been advised that contact was made with you today by the Administrator to discuss your submitted doctor's note and provide an update on your status. Please be reminded that included in your FMLA approval email was verbiage indicating the conditions for returning to work after exhaustion of FMLA. The communication included providing specific information in your return to work doctors note. At this time, JEVS has not received the required doctors note returning you to work without restriction which is in accordance with JEVS FMLA policy. As a result, you are

7

**not approved** to return to work until an approved doctors note is provided.  At this time you are to **clock out of KRONOS**.  In the interim, while you are awaiting a response from your physician, please be advised that you are eligible to apply for Sabbatical Leave, or Disability Leave, and may be eligible for Long Term Disability if applicable.  Information relative to leaves can be obtained in the Collective Bargaining Agreement (which I've attached for your convenience).   Let me know if there are questions."

59.     On June 7, 2022, Plaintiff responded to Highsmith via email, copying Silva, Liz Curcio Griscom, Senior Human Resources Manager, and Phil Johnson, Union Representative, and stated: "After speaking with Nicole Clark this morning she stated that she would fax the required additional documentation to my doctor's office. (as per the request on the Dr. note for additional information). She said that she would send a message when it was faxed. (I have not received that it was completed) I will follow up with my doctor's office to see if the documentation was sent and when I should receive a note back.  Also I would like to confirm that you were aware of the hours worked on 6/6/2022, though the documentation below states that I am now, not approved to work as of mid-day today. I would like more information about my other options as far as the sabbatical leave and disability, can you assist in which team will be best to answer those questions."

60.     On June 7, 2022, Highsmith responded to Plaintiff via email and confirmed that Plaintiff had worked and would be paid for June 6 and 7, 2022, and provided information regarding Defendant's leave policies.

61.     On June 16, 2022, in an email to Silva, Mehler, Highsmith, and Woods, copying Phil Johnson, Union Representative, Plaintiff attached a doctor's note dated June 16, 2022, provided a summary of the above events, and stated the following: "I was told that the company

8

would not grant my accommodation request to work remotely, so I needed to go out of work on an unpaid leave of absence. I do not understand why I am not permitted to work remotely as accommodation for my pregnancy and underlying medical conditions. I am attaching my most recent doctor's note and again requesting the reasonable accommodation of working remotely due to my pregnancy and medical conditions."

62.    Plaintiff's doctor's note stated that she was thirty-one (31) weeks pregnant with an expected delivery date of August 17, 2022 and requested that Plaintiff be allowed to work remotely.

63.    Plaintiff received no response to her above email and request for a reasonable accommodation.

64.    On June 21, 2022, in an email to Silva, Plaintiff requested an update in response to her June 16, 2022 email and request for a reasonable accommodation.

65.    On June 21, 2022, following the above, Highsmith responded to Plaintiff via email, copying Silva, Mehler, Woods, Johnson, Latasha Beckton, Senior Human Resources Manager, and Teneika Brown, Case Coordinator, and stated: "Effective June 22, 2022 you are being notified that you are approved to temporarily work remotely in the capacity of CAO Liaison. Please be advised that an updated doctors note must be provided to your supervisor with a copy to me in 30 days which will be **7/22/2022**. The doctors note must be specific as it relates to the reason and duration for continued remote work accommodation. You are to punch into KRONOS, connect with your supervisor as to work assignments daily in accordance with established Work Ready procedures. As you may be aware, Child Rearing and Sabbatical Leave are provisions in the union contact. I've attached a copy for your convenience. Once the temporary accommodation for remote work request has expired, you may want to make inquiry of those leaves you are eligible to utilize.

9

At this time, the position has not been identified as a remote position and your accommodation is temporary based upon the needs of the program and your current health condition."

66.    On June 22, 2022, Plaintiff returned to work with the accommodation of working remotely full time.

67.    On June 27, 2022, in an email from Highsmith, she stated: "Your [reasonable accommodation] request will be reviewed monthly as the program accesses its business needs.  As you are aware, your FMLA eligibility exhausted."

68.    The information in Highsmith's email was false, as Plaintiff had FMLA hours remaining as of June 27, 2022.

69.    On July 15, 2022, in an email to Silva and Highsmith, Plaintiff submitted a doctor's note stating that she was thirty-five (35) weeks pregnant, with an expected delivery date of August 17, 2022, and requested the reasonable accommodation of continuing to work remotely full time.

70.    On July 18, 2022, Rishenna Gaskins, Leave of Absence Administrator, Human Resources, emailed Plaintiff and stated that she had received Plaintiff doctor's note and would fax additional paperwork for Plaintiff's doctor to complete.

71.    On July 19, 2022, Highsmith emailed Plaintiff, copying Silva and Mehler, and stated that Defendant had "approved this temporary continued remote accommodation request until [Plaintiff's] confirmed expected delivery date of 8/17/2022 which is identified in the doctor's note.  As of 8/17/2022, unless [Plaintiff's] delivery is sooner, the approved remote accommodation approval will end."

72.    On August 16, 2022, in an email to Silva, Highsmith, and Gaskins, Plaintiff attached an updated doctor's note and stated: "Please see the updated document attached. It's my most recent doctor's note for temporary remote work. My due date is 8/17/2022 but just in case he

10

doesn't arrive tonight, I would like to continue to work until the day I deliver." My doctor's note stated the following: "[Alicia Phillip] is currently 35+ weeks pregnant with an expected delivery date of August 17, 2022. We ask that she continue to work remote until further notice- **with no restrictions until she delivers.** We request that you send - **our office official paperwork to be completed**."

73. On August 22, 2022, in an email to Silva and Gaskins, Plaintiff stated that she was in labor and would be starting her maternity leave that day.

74. On August 22, 2022, Plaintiff went out of work on maternity leave.

75. On August 22, 2022, Plaintiff gave birth.

76. On October 24, 2022, in an email to Gaskins, copying Silva, Highsmith, and Gonzalez, Plaintiff attached a copy of her doctor's note stating that she was cleared to return to work on October 25, 2022 with the reasonable accommodation of working remotely full time, due to her "weakened extremities and pelvis."

77. On October 25, 2022, Gaskins emailed Plaintiff and stated that she had received Plaintiff doctor's note and that Plaintiff was cleared to return to work as of October 25, 2022.

78. On October 26, 2022, after Plaintiff stated that she would begin working on October 27, 2022, Silva sent Plaintiff a text message and stated that Plaintiff doctor's note was not approved.

79. Silva stated that Plaintiff needed to wait to begin working until Defendant "c[a]me up with a resolution."

80. Later that day, Plaintiff responded to Silva via text message by forwarding the above email from Gaskins that she had received the day prior allowing her to return to work, and asking if it was not true.

11

81.     Silva responded via text message that, no, it was not true, and that Plaintiff's accommodation request to work fully remotely had not been approved.

82.     Plaintiff received no further update from Defendant regarding her reasonable accommodation request.

83.     On November 1, 2022, in an email to Gaskins, copying Silva, Highsmith, Gonzalez, and Beckton, Plaintiff stated: "I am reaching out requesting an update for my status to start back working. My supervisor texted me and told me the above information [from Gaskins' October 25, 2022 email to me] was incorrect and that the accommodation requested was not approved and they needed to speak with HR and the union, this was told to me last Wednesday. I have yet to hear back from anyone. Can I please get an update so that I'll know when I'll be able to truly start working again."

84.     On November 1, 2022, Gaskins emailed Plaintiff and stated: "The accommodation approval for you to work from home will come from your manager and Sr HR manager.  Once they have made a decision, someone will reach back out to you."

85.     On November 3, 2022, in a memo from Gonzalez to employees, Defendant stated that "remote work is not very sustainable," and that, "[i]f you are returning from an extended leave such as vacation, sick time or FMLA, you'll be expected to report to the office upon your return."

86.     Defendant did not include anything regarding reasonable accommodations for a disability in its November 3, 2022 memo.

87.     Plaintiff received no further update from Defendant regarding her reasonable accommodation request.

88.     On November 7, 2022, in an email to Gaskins, copying Silva, Highsmith, Gonzalez, and Beckton, Plaintiff stated: "I still have not received confirmation, or any further

communication, that I may return to work with the accommodation of working remotely, per my request and doctor's letter submitted on October 24. I am and have been ready to return to work full time, working remotely."

89.     On November 7, 2022, following the above, Beckton emailed Plaintiff and stated: "I apologize for the delay while we are reviewing your current accommodation request.  I will give you a call tomorrow afternoon at 2:30pm to discuss."

90.     On November 8, 2022, in an email to Beckton, copying Gaskins, Silva, Highsmith, and Gonzalez, Plaintiff stated: "Thank you for responding I am currently at the hospital with my youngest son I will not be available for a call, can you please correspond via email and when I am able, I will respond thank you."

91.     On November 10, 2022, Plaintiff filed her first EEOC Charge and informed Defendant, via email to Beckton, copying Gaskins, Silva, Beckton, and Gonzalez, of the same, and attach a copy of her Charge to the email.

92.     On November 10, 2022, in an email from Beckton, Defendant denied her reasonable accommodation request.  The email stated the following:

    a.  After reviewing your accommodation requests and return to work note it has been determined that Work Ready cannot accommodate you fully working remote 5 day per week. The program has funder requirements that have to be met that require all employees to work on-site at least twice per week.  At this current time there are two options that the agency can accommodate regarding your employment with Work Ready:

        i.  You would need to submit a doctors note that allows you to return to work with no restrictions.

ii.    Or you could elect to stay out on Union Disability leave until March 8, 2023. If you elect to continue on Union Disability leave and your doctor clears you to return to work prior to March 8, 2023 without restrictions you will need to contact me via email.

b.    You were notified previously that the Collective Bargaining Agreement states that JEVS will cover your health insurance for a portion of your leave time. This coverage will exhaust on 11/22/22.  Thereafter, you may participate in the health insurance at your own expense for the duration of the leave.

93.    On November 11, 2022, in an email to Beckton, copying Gonzalez, Silva, Gaskins, and Curcio Griscom, Plaintiff stated the following:

a.    [P]er my doctor, I am not able to go into the office and can only work remotely, which is why I am requesting the accommodation of working from home due my medical condition. I am able to do my job duties from home, which I had been doing before I went out on maternity leave. I am and will continue to be ready, willing, and able to work remotely; and that I believe that I am being discriminated against because of my underlying medical condition, my pregnancy and you're retaliating against me because I requested reasonable accommodations due to my underlying medical condition, pregnancy and when I went out on maternity leave.  Can you please confirm that you are stating that there is no accommodation that you are willing to give me in order for me to do my job, and that the only way that you will allow you to return to work is for me to be cleared by my doctor to return to work without restrictions and the ability to be in the office at least two days per week.

14

94. On November 15, 2022, in an email from Beckton, she stated the following:

a. The program need and requirement at this time is that employees report to the office two times per week. In my previous email below I informed you that based on the funder requirements and JEVS policy all employees are required to come into the office twice per week.  Since your doctor's note only allows you to work remotely at this time the accommodating option that is you can remain out on leave until your leave time expires on March 8, 2023.

95. On November 15, 2022, following the above, in an email from Beckton, she stated the following:

a. Your request for accommodation was approved on June 22, 2022 prior to your FMLA expiring.  You were notified at that time that you were approved to temporarily work in a remote capacity as a CAO Liaison.  You were further notified that you would need to provided an updated doctors note to your supervisor and HR Manager in 30 days which was 7/22/2022.  You were informed that the doctors note needed to be specific as it related to reason and duration for continued remote work accommodation.

b. Your FMLA expired on 8/25/22.  At that time you were notified by our Leave of Absence Coordinator, Rishenna Gaskins that since you were unable to return to work after 8/25/22 when your FMLA expired, you were entitled to take additional time away from work without pay for up to 1 year through the Child Rearing leave starting from 8/25/22- 3/8/23 per the union Collective Bargaining Agreement. The program need and requirement at this time is that employees report to the office two times per week.

15

96.    After Plaintiff informed Defendant of her pregnancy and sought reasonable accommodations for her pregnancy and disability, she was treated differently and worse, and in a more hostile and dismissive manner, than male and/or non-pregnant and/or nondisabled employees and/or employees who had not sought reasonable accommodations and/or were not anticipating taking maternity leave were treated.

97.    Defendant did not target or treat in the same way similarly situated male and/or noncomplaining and/or not recently pregnant and/or nondisabled employees and/or employees who had not sought reasonable accommodations for a disability or pregnancy.

98.    Defendant failed to reasonably accommodate Plaintiff for her pregnancy and/or disability because of her sex and/or pregnancy and/or disability and/or medical leave of absence and/or maternity leave and/or seeking reasonable accommodations in connection with her pregnancy and disability and/or her engaging in protected activity.

99.    Defendant subjected Plaintiff to a hostile work environment because of her sex and/or pregnancy and/or disability(ies) (including her record thereof and Defendants' perception of her as a disabled person) and/or medical leave of absence and/or maternity leave and/or seeking reasonable accommodations in connection with her pregnancy and disability and/or her engaging in protected activity.

100.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

101.    Plaintiff's sex and/or pregnancy and/or disability(ies) (including her record thereof and Defendants' perception of her as a disabled person) and/or requests for accommodations and/or protected activity was a motivating and/or determinative factor in Defendant's

16

discriminatory and retaliatory conduct toward her.

102.    At all times material hereto, Plaintiff was able to perform the essential functions of her job with or without a reasonable accommodation.

103.    Defendants acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights.

104.    Defendant's sex, pregnancy, and disability discriminatory and retaliatory conduct toward Plaintiff has caused her emotional distress.

105.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

106.    On April 28, 2023, Plaintiff was forced to resign from Defendant after more than seven (7) years of service as a result of Defendant's sex, pregnancy, and disability discrimination, and as a result of Defendant's retaliation against Plaintiff for having requested reasonable accommodations and for having engaged in protected activity.

## COUNT I – TITLE VII

107.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

108.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

109.    Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

17

110. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the losses set forth herein and has incurred attorneys' fees and costs.

111. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory acts unless and until this Court grants the relief requested herein.

112. No previous application has been made for the relief requested herein.

## COUNT II – ADA

113. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

114. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADA.

115. Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

116. As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

117. Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

118. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

119. No previous application has been made for the relief requested herein.

## COUNT III – FMLA

120. Plaintiff incorporates herein by reference the above paragraphs as if set forth herein

in their entirety.

121.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated the FMLA.

122.    Plaintiff's exercise of her FMLA rights was considered as a negative factor, and was a motivating and determinative factor in Defendant's conduct towards Plaintiff.

123.    Defendant's conduct was retaliatory.

124.    Said violations were willful, not in good faith, and Defendant did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

125.    Defendant's violations of the FMLA warrant the imposition of liquidated damages.

126.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until the Court grants the relief requested herein.

127.    No previous application has been made for the relief requested herein

### COUNT IV – NJLAD

128.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

129.    118. Defendant, by the above-described discriminatory and retaliatory acts, has violated the NJLAD.

130.    Members of Defendant's upper management had actual participation in, or willful indifference to, Defendant's wrongful and especially egregious conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

131.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred

19

attorney's fees and costs.

132.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until this Court grants the relief requested herein.

133.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief by:

a)    declaring the acts and practices complained of herein to be in violation of Title VII;

b)    declaring the acts and practices complained of herein to be in violation of the ADA;

c)    declaring the acts and practices complained of herein to be in violation of the FMLA;

d)    declaring the acts and practices complained of herein to be in violation of the NJLAD;

e)    enjoining and restraining permanently the violations alleged herein;

f)    entering judgment against Defendant and in favor of the Plaintiff in an amount to be determined;

g)    awarding compensatory damages to make Plaintiff whole for the past and future economic losses that she has suffered;

h)    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

i)    awarding punitive damages to Plaintiff;

20

j)      awarding liquidated damages to Plaintiff;

k)      awarding Plaintiff other such damages as are appropriate under Title VII, the ADA, the FMLA, and the NJLAD;

l)      awarding Plaintiff the costs of this action, including expert fees and other disbursements, together with reasonable attorney's fees; and

m)      granting such other and further relief as this Court may deem just, proper, or equitable, including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


                                        **CONSOLE MATTIACCI LAW, LLC**

Dated: October 13, 2023          BY:    */s/ Lauren C. Bateman*
                                        Lauren C. Bateman, Esq.
                                        110 Marter Avenue, Suite 502
                                        Moorestown, NJ 08057
                                        Telephone: (856)-854-4000
                                        bateman@consolelaw.com

                                        *Attorney for Plaintiff*

21

# Exhibit "1"

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | AGENCY<br>Q  FEPA<br>X  EEOC | CHARGE NUMBER |
|---|---|---|
| STATE OR LOCAL AGENCY: <u>Pennsylvania Human Relations Commission</u> | | |

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Alicia Phillip** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>█████████ |
|---|---|

| STREET ADDRESS<br>████████████ | CITY, STATE AND ZIP<br>Clementon, NJ 08021 | DATE OF BIRTH<br>███████ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**JEVS Human Services** | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(215) 854-1800 |
|---|---|---|
| STREET ADDRESS<br>1845 Walnut Street, 7th Floor | CITY, STATE AND ZIP<br>Philadelphia, PA 19103 | COUNTY<br>Philadelphia |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race   Q Color   **X** Sex   Q Religion   Q National Origin<br>**X** Retaliation   Q Age   **X** Disability   **X** Other *(Specify)* Pregnancy | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*                    *Latest*  11/10/2022 (ongoing) |
|---|---|

**The Particulars Are:**

A.      1.      Relevant Work History

I was hired by Respondent on or about August 3, 2014. I am a current employee of Respondent. I hold the position of County Assistance Office Liaison. I report to Annette Silva, Quality Assurance Director. Silva reports to Luis Gonzalez, Work Ready Director. Gonzalez reports to Nicki Woods, Executive Director.

Respondent subjected me to a hostile work environment because of my sex, my pregnancy, my disability, my seeking reasonable accommodations for my pregnancy and my disability, and my engaging in protected activity. Respondent has failed to reasonably accommodate me for my disability and pregnancy-related medical conditions.

I consistently demonstrate positive performance and dedication to Respondent. I consistently perform my job duties in a highly competent manner.

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br>_____<br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |

| Date: **11/9/2022**   Charging Party *(Signature)*: | SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|

**EEOC Charge of Discrimination**
**Initials of Charging Party – AP**

2.    Harm Summary

I have been discriminated against because of my sex (female), my pregnancy, and my disability (including history of and regarded as), and retaliated against because of my seeking reasonable accommodations for my pregnancy and disability and my engaging in protected activity. Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following.

(a)    On or about December 18, 2021, I learned that I was pregnant and due on August 17, 2022.

(b)    On January 26, 2022, I submitted to Silva a doctor's note that stated that I was eleven (11) weeks pregnant and had an estimated delivery date of August 17, 2022.

(c)    On March 2, 2022, in an email to Sue Highsmith, Senior Human Resources Manager, titled "ADA Accommodations Request," I requested the paperwork that I needed to complete and submit to request an accommodation for my pregnancy and disability, as I was experiencing medical issues related to the same. I stated that I had been told to use my approved intermittent FMLA leave to take off time as needed due to my pregnancy and disability until my accommodation request to work remotely was approved.

(d)    On March 17, 2022, in a phone call with Nicole Clark, FMLA Human Resources Manager, she told me that the FMLA forms submitted by my therapist were not accessible in the format provided, and that I had until March 21, 2022 to submit my FMLA forms in an accessible format. When I again asked to be provided with the accommodation paperwork, she stated she was unaware of my prior request.

(e)    On March 17, 2022, following the above, in an email to Clark, I forwarded to her my above March 2, 2022 email to Highsmith.

(f)    On March 17, 2022, following the above, in a phone call with Highsmith, she apologized for neglecting to respond to my March 2, 2022 email requesting the accommodation paperwork. I asked to be permitted to work remotely as an accommodation for my pregnancy and medical condition. Highsmith stated that Respondent was not a remote working company.

(g)    On March 18, 2022, following the above, in an email to Highsmith, copying Silva and Mary Mehler, then Program Director, I attached my doctor's note, requesting the reasonable accommodation of working from home full time, instead of three (3) days from home and two (2) days from the office, due to my pregnancy and sarcoidosis. I stated that I had sent the requested accommodation request paperwork to my doctor for completion. I stated that I was working with my doctor to have everything submitted to Respondent.

(h)    While my reasonable accommodation request was pending, I continued to work remotely on Mondays, Wednesdays, and Fridays, and was approved for intermittent FMLA leave on Tuesdays and Thursdays when I was scheduled to report to work in the office.

(i)    On March 25, 2022, I went out of work on an approved continuous FMLA medical leave of absence in connection with my pregnancy- and disability-related medical issues.

(j)    My FMLA forms stated that I was diagnosed with depression with symptoms including suicidal ideations, anxiety, panic attacks, hopelessness, and poor

2

**EEOC Charge of Discrimination**
**Initials of Charging Party – AP**

functioning.

(k)  I was scheduled to return to work on June 5, 2022.

(l)  On June 2, 2022, in an email to Silva, Mehler, Highsmith, and Clark, I submitted my doctor's note, clearing me to return to work with the request to work remotely full time as a reasonable accommodation for my pregnancy and disability.

(m)  I was and am able to do my job remotely.

(n)  On June 3, 2022, following the above, in a text from Silva, she instructed me to email my doctor's note to the FMLA Administrator.

(o)  On June 3, 2022, following the above, I forwarded my above doctor's note to the FMLA Administrator.

(p)  On June 6, 2022, I clocked into work remotely, as usual for a Monday.

(q)  On June 6, 2022, following the above, I was called into a virtual meeting with Silva and Highsmith.  They stated that, because my doctor's note requested that I work remotely full time, I was not allowed to work at all until my request was approved.  I was told that, until my doctor's note was approved, I was prevented from working and must go back out of work on an unpaid leave of absence.  They stated, however, that since I had already worked half a day that day, I should continue working the rest of the day and begin my unpaid leave the next day.  Highsmith indicated that my accommodation request would not be approved.  I stated that I was already scheduled to work remotely on Mondays, Wednesdays, and Fridays, and scheduled to work in the office only on Tuesday and Thursday.  I stated that my accommodation request was to work remotely on Tuesdays and Thursdays, in addition to Mondays, Wednesdays, and Fridays, due to my pregnancy and medical conditions.  Highsmith told me that I was "too emotional," referenced my pregnancy and medical conditions, and stated that the meeting would be continued at a later date.

(r)  On June 7, 2022, after I clocked in and began working, Silva called me and instructed me to clock out immediately as my accommodation request had not been approved.

(s)  On June 7, 2022, following the above, in a phone call with Clark, she stated that she had received my doctor's note but that the note did not state that I was cleared to return to work without restrictions, so my accommodation request was denied.  She asked if I read my doctor's note.  She stated that she would fax accommodation paperwork to my doctor's office.

(t)  On June 7, 2022, in an email from Highsmith, she stated: "As a follow up to our communication yesterday, please be advised that I contacted Nicole Clark, FMLA Administrator and requested a connection with you regarding the doctors note that was submitted 6/2/2022.  I've been advised that contact was made with you today by the Administrator to discuss your submitted doctor's note and provide an update on your status.  Please be reminded that included in your FMLA approval email was verbiage indicating the conditions for returning to work after exhaustion of FMLA.  The communication included providing specific information in your return to work doctors note.   At this time, JEVS has not received the required doctors note returning you to work without restriction which is in accordance with JEVS FMLA policy.  As a result, you are **not approved** to return to work until an approved doctors note is provided.  At this time you are to **clock out of KRONOS**.  In the interim, while you are awaiting a response from your physician, please be advised that you are

3

**EEOC Charge of Discrimination**
**Initials of Charging Party – AP**

eligible to apply for Sabbatical Leave, or Disability Leave, and may be eligible for Long Term Disability if applicable.  Information relative to leaves can be obtained in the Collective Bargaining Agreement (which I've attached for your convenience).   Let me know if there are questions."

(u) On June 7, 2022, in a response email to Highsmith, copying Silva, Liz Curcio Griscom, Senior Human Resources Manager, and Phil Johnson, Union Representative, I stated: "After speaking with Nicole Clark this morning she stated that she would fax the required additional documentation to my doctor's office. (as per the request on the Dr. note for additional information). She said that she would send a message when it was faxed. (I have not received that it was completed) I will follow up with my doctor's office to see if the documentation was sent and when I should receive a note back.  Also I would like to confirm that you were aware of the hours worked on 6/6/2022, though the documentation below states that I am now, not approved to work as of mid-day today. I would like more information about my other options as far as the sabbatical leave and disability, can you assist in which team will be best to answer those questions."

(v) On June 7, 2022, in a response email from Highsmith, she confirmed that I worked and would be paid for June 6 and 7, 2022, and provided information regarding Respondent's leave policies.

(w) On June 16, 2022, in an email to Silva, Mehler, Highsmith, and Woods, copying Phil Johnson, Union Representative, I attached my doctor's note dated June 16, 2022, provided a summary of the above events, and stated the following: "I was told that the company would not grant my accommodation request to work remotely, so I needed to go out of work on an unpaid leave of absence. I do not understand why I am not permitted to work remotely as accommodation for my pregnancy and underlying medical conditions. I am attaching my most recent doctor's note and again requesting the reasonable accommodation of working remotely due to my pregnancy and medical conditions."  My doctor's note stated that I was thirty-one (31) weeks pregnant with an expected delivery date of August 17, 2022 and requested that I be allowed to work remotely.

(x) I received no response to my above email and request for a reasonable accommodation.

(y) On June 21, 2022, in an email to Silva, I requested an update in response to my email above and request for a reasonable accommodation.

(z) On June 21, 2022, following the above, in an email from Highsmith, copying Silva, Mehler, Woods, Johnson, Latasha Beckton, Senior Human Resources Manager, and Teneika Brown, Case Coordinator, she stated the following: "Effective June 22, 2022 you are being notified that you are approved to temporarily work remotely in the capacity of CAO Liaison. Please be advised that an updated doctors note must be provided to your supervisor with a copy to me in 30 days which will be **7/22/2022**. The doctors note must be specific as it relates to the reason and duration for continued remote work accommodation. You are to punch into KRONOS, connect with your supervisor as to work assignments daily in accordance with established Work Ready procedures. As you may be aware, Child Rearing and Sabbatical Leave are provisions in the union contact. I've attached a copy for your convenience. Once the temporary accommodation for remote work request has expired, you may want to make inquiry of those leaves you are eligible to utilize. At this time, the position has not been identified as a remote position and your accommodation is temporary based upon the needs of the program and your current health condition."

4

**EEOC Charge of Discrimination**
**Initials of Charging Party –  AP**

(aa) On June 22, 2022, I returned to work with the accommodation of working remotely full time.

(bb) On June 27, 2022, in an email from Highsmith, she stated: "Your [reasonable accommodation] request will be reviewed monthly as the program accesses its business needs.  As you are aware, your FMLA eligibility exhausted."  This was false, as I had FMLA hours remaining as of June 27, 2022.

(cc) On July 15, 2022, in an email to Silva and Highsmith, I submitted my doctor's note, stating that I was thirty-five (35) weeks pregnant, with an expected delivery date of August 17, 2022, and requesting the reasonable accommodation of continuing to work remotely full time.

(dd) On July 18, 2022, in an email from Rishenna Gaskins, Leave of Absence Administrator, Human Resources, she stated that she received my doctor's note and would fax additional paperwork for my doctor to complete.

(ee) On July 19, 2022, in an email from Highsmith, copying Silva and Mehler, she stated that Respondent "approved this temporary continued remote accommodation request until [my] confirmed expected delivery date of 8/17/2022 which is identified in the doctor's note.  As of 8/17/2022, unless [my] delivery is sooner, the approved remote accommodation approval will end."

(a) On August 16, 2022, in an email to Silva, Highsmith, and Gaskins, I stated the following and attached my updated doctor's note: "Please see the updated document attached. It's my most recent doctor's note for temporary remote work. My due date is 8/17/2022 but just in case he doesn't arrive tonight, I would like to continue to work until the day I deliver."  My doctor's note stated the following: "[Alicia Phillip] is currently 35+ weeks pregnant with an expected delivery date of August 17, 2022. We ask that she continue to work remote until further notice- **with no restrictions until she delivers.** We request that you send - **our office official paperwork to be completed**."

(b) On August 22, 2022, in an email to Silva and Gaskins, I stated that I was in labor and would be starting my maternity leave that day.

(c) On August 22, 2022, I went out of work on maternity leave.

(d) On August 22, 2022, I gave birth.

(e) On October 24, 2022, in an email to Gaskins, copying Silva, Highsmith, and Gonzalez, I attached a copy of my doctor's note stating that I was cleared to return to work on October 25, 2022 with the reasonable accommodation of working remotely full time, due to my "weakened extremities and pelvis."

(f) On October 25, 2022, in an email from Gaskins, she stated that she had received my doctor's note and that I was cleared to return to work as of October 25, 2022.

(g) On October 26, 2022, in a text message from Silva, after I stated that I would begin working on October 27, 2022, she stated that my doctor's note was not approved. She stated that I needed to wait to begin working until Respondent "c[a]me up with a resolution."

(h) On October 26, 2022, following the above, in a text message to Silva, I forwarded the above email from Gaskins that I received on October 25, 2022, and stated that this was the email that I had received, allowing me to return to work.  I asked if it was not

5

**EEOC Charge of Discrimination**
**Initials of Charging Party –** AP

true.

(i)    On October 26, 2022, following the above, in a text message from Silva, she responded that, no, it was not true, and that my accommodation request to work fully remote had not been approved.

(j)    I received no further update from Respondent regarding my reasonable accommodation request.

(k)    On November 1, 2022, in an email to Gaskins, copying Silva, Highsmith, Gonzalez, and Beckton, I stated the following: "I am reaching out requesting an update for my status to start back working. My supervisor texted me and told me the above information [from Gaskins' October 25, 2022 email to me] was incorrect and that the accommodation requested was not approved and they needed to speak with HR and the union, this was told to me last Wednesday. I have yet to hear back from anyone. Can I please get an update so that I'll know when I'll be able to truly start working again."

(l)    On November 1, 2022, in a response email from Gaskins, she stated: "The accommodation approval for you to work from home will come from your manager and Sr HR manager.  Once they have made a decision, someone will reach back out to you."

(m)   On November 3, 2022, in a memo from Gonzalez to employees, Respondent stated that "remote work is not very sustainable," and that, "[i]f you are returning from an extended leave such as vacation, sick time or FMLA, you'll be expected to report to the office upon your return."  Respondent did not include anything regarding reasonable accommodations for a disability.

(n)    I received no further update from Respondent regarding my reasonable accommodation request.

(o)    On November 7, 2022, in an email to Gaskins, copying Silva, Highsmith, Gonzalez, and Beckton, I stated the following: "I still have not received confirmation, or any further communication, that I may return to work with the accommodation of working remotely, per my request and doctor's letter submitted on October 24. I am and have been ready to return to work full time, working remotely."

(p)    On November 7, 2022, following the above, in an email from Beckton, she stated: "I apologize for the delay while we are reviewing your current accommodation request.  I will give you a call tomorrow afternoon at 2:30pm to discuss."

(q)    On November 8, 2022, in an email to Beckton, copying Gaskins, Silva, Highsmith, and Gonzalez, I stated: "Thank you for responding I am currently at the hospital with my youngest son I will not be available for a call, can you please correspond via email and when I am able, I will respond thank you."

(r)    I have received no further communication from Respondent.

(s)    Respondent failed to reasonably accommodate me for my pregnancy and disability.

(t)    Respondent subjected me to a hostile work environment because of my sex and/or pregnancy and/or disability and/or medical leave of absence and/or maternity leave and/or seeking reasonable accommodations in connection with my pregnancy and disability.

6

**EEOC Charge of Discrimination**
**Initials of Charging Party –** AP

(ff)  After I informed Respondent of my pregnancy and sought reasonable accommodations for my pregnancy and disability, I was treated differently and worse, and in a more hostile and dismissive manner, than male and/or non-pregnant and/or nondisabled employees and/or employees who had not sought reasonable accommodations and/or were not anticipating taking maternity leave were treated.

(u)  Respondent's sex, pregnancy, and disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

(v)  Respondent did not target or treat in the same way similarly-situated male and/or noncomplaining and/or not recently pregnant and/or nondisabled employees and/or employees who had not sought reasonable accommodations for a disability or pregnancy.

B.   1.   Respondent's Stated Reasons

(a)   Respondent provided no explanation for failing to reasonably accommodate me for my pregnancy and my disability.

(b)   Respondent provided no explanation for subjecting me to a hostile work environment because of my sex and/or my pregnancy and/or my disability and/or my seeking reasonable accommodations for my pregnancy and disability and/or my engaging in protected activity.

(c)   Respondent provided no explanation for failing to remedy or prevent the sex, pregnancy, and discrimination and retaliation against me.

C.   1.   Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my sex (female), my pregnancy, and my disability, and retaliated against me based on my seeking reasonable accommodations for my disability and pregnancy and my engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO"), as set forth herein.

# Exhibit "2"

| AMENDED CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | AGENCY<br>Ꝍ  FEPA<br>X   EEOC | CHARGE NUMBER |
|---|---|---|
| STATE OR LOCAL AGENCY: <u>Pennsylvania Human Relations Commission</u> | | |

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Alicia Phillip** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>████████████ |
|---|---|

| STREET ADDRESS<br>████████████ | CITY, STATE AND ZIP<br>Clementon, NJ 08021 | DATE OF BIRTH<br>████████ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**JEVS Human Services** | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(215) 854-1800 |
|---|---|---|
| STREET ADDRESS<br>1845 Walnut Street, 7th Floor | CITY, STATE AND ZIP<br>Philadelphia, PA 19103 | COUNTY<br>Philadelphia |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Ꝍ Race   Ꝍ Color  **X** Sex   Ꝍ Religion   Ꝍ National Origin<br>   **X** Retaliation   Ꝍ Age  **X** Disability  **X** Other *(Specify)* Pregnancy | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*           *Latest*  11/17/2022 (ongoing) |
|---|---|

**The Particulars Are:**

A.     1.      Relevant Work History

I was hired by Respondent on or about August 3, 2014. I am a current employee of Respondent. I hold the position of County Assistance Office Liaison. I report to Annette Silva, Quality Assurance Director. Silva reports to Luis Gonzalez, Work Ready Director. Gonzalez reports to Nicki Woods, Executive Director.

Respondent subjected me to a hostile work environment because of my sex, my pregnancy, my disability, my seeking reasonable accommodations for my pregnancy and my disability, and my engaging in protected activity. Respondent has failed to reasonably accommodate me for my disability and pregnancy-related medical conditions.

I consistently demonstrate positive performance and dedication to Respondent. I consistently perform my job duties in a highly competent manner.

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br>_____<br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |
| Date: **11/18/2022**    Charging Party *(Signature)*: | SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

2.    Harm Summary

I have been discriminated against because of my sex (female), my pregnancy, and my disability (including history of and regarded as), and retaliated against because of my seeking reasonable accommodations for my pregnancy and disability and my engaging in protected activity. Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following.

(a)    On or about December 18, 2021, I learned that I was pregnant and due on August 17, 2022.

(b)    On January 26, 2022, I submitted to Silva a doctor's note that stated that I was eleven (11) weeks pregnant and had an estimated delivery date of August 17, 2022.

(c)    On March 2, 2022, in an email to Sue Highsmith, Senior Human Resources Manager, titled "ADA Accommodations Request," I requested the paperwork that I needed to complete and submit to request an accommodation for my pregnancy and disability, as I was experiencing medical issues related to the same. I stated that I had been told to use my approved intermittent FMLA leave to take off time as needed due to my pregnancy and disability until my accommodation request to work remotely was approved.

(d)    On March 17, 2022, in a phone call with Nicole Clark, FMLA Human Resources Manager, she told me that the FMLA forms submitted by my therapist were not accessible in the format provided, and that I had until March 21, 2022 to submit my FMLA forms in an accessible format. When I again asked to be provided with the accommodation paperwork, she stated she was unaware of my prior request.

(e)    On March 17, 2022, following the above, in an email to Clark, I forwarded to her my above March 2, 2022 email to Highsmith.

(f)    On March 17, 2022, following the above, in a phone call with Highsmith, she apologized for neglecting to respond to my March 2, 2022 email requesting the accommodation paperwork. I asked to be permitted to work remotely as an accommodation for my pregnancy and medical condition. Highsmith stated that Respondent was not a remote working company.

(g)    On March 18, 2022, following the above, in an email to Highsmith, copying Silva and Mary Mehler, then Program Director, I attached my doctor's note, requesting the reasonable accommodation of working from home full time, instead of three (3) days from home and two (2) days from the office, due to my pregnancy and sarcoidosis. I stated that I had sent the requested accommodation request paperwork to my doctor for completion. I stated that I was working with my doctor to have everything submitted to Respondent.

(h)    While my reasonable accommodation request was pending, I continued to work remotely on Mondays, Wednesdays, and Fridays, and was approved for intermittent FMLA leave on Tuesdays and Thursdays when I was scheduled to report to work in the office.

(i)    On March 25, 2022, I went out of work on an approved continuous FMLA medical leave of absence in connection with my pregnancy- and disability-related medical issues.

(j)    My FMLA forms stated that I was diagnosed with depression with symptoms including suicidal ideations, anxiety, panic attacks, hopelessness, and poor

2

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

functioning.

(k)  I was scheduled to return to work on June 5, 2022.

(l)  On June 2, 2022, in an email to Silva, Mehler, Highsmith, and Clark, I submitted my doctor's note, clearing me to return to work with the request to work remotely full time as a reasonable accommodation for my pregnancy and disability.

(m)  I was and am able to do my job remotely.

(n)  On June 3, 2022, following the above, in a text from Silva, she instructed me to email my doctor's note to the FMLA Administrator.

(o)  On June 3, 2022, following the above, I forwarded my above doctor's note to the FMLA Administrator.

(p)  On June 6, 2022, I clocked into work remotely, as usual for a Monday.

(q)  On June 6, 2022, following the above, I was called into a virtual meeting with Silva and Highsmith.  They stated that, because my doctor's note requested that I work remotely full time, I was not allowed to work at all until my request was approved.  I was told that, until my doctor's note was approved, I was prevented from working and must go back out of work on an unpaid leave of absence.  They stated, however, that since I had already worked half a day that day, I should continue working the rest of the day and begin my unpaid leave the next day.  Highsmith indicated that my accommodation request would not be approved.  I stated that I was already scheduled to work remotely on Mondays, Wednesdays, and Fridays, and scheduled to work in the office only on Tuesday and Thursday.  I stated that my accommodation request was to work remotely on Tuesdays and Thursdays, in addition to Mondays, Wednesdays, and Fridays, due to my pregnancy and medical conditions.  Highsmith told me that I was "too emotional," referenced my pregnancy and medical conditions, and stated that the meeting would be continued at a later date.

(r)  On June 7, 2022, after I clocked in and began working, Silva called me and instructed me to clock out immediately as my accommodation request had not been approved.

(s)  On June 7, 2022, following the above, in a phone call with Clark, she stated that she had received my doctor's note but that the note did not state that I was cleared to return to work without restrictions, so my accommodation request was denied.  She asked if I read my doctor's note.  She stated that she would fax accommodation paperwork to my doctor's office.

(t)  On June 7, 2022, in an email from Highsmith, she stated: "As a follow up to our communication yesterday, please be advised that I contacted Nicole Clark, FMLA Administrator and requested a connection with you regarding the doctors note that was submitted 6/2/2022.  I've been advised that contact was made with you today by the Administrator to discuss your submitted doctor's note and provide an update on your status.  Please be reminded that included in your FMLA approval email was verbiage indicating the conditions for returning to work after exhaustion of FMLA.  The communication included providing specific information in your return to work doctors note.   At this time, JEVS has not received the required doctors note returning you to work without restriction which is in accordance with JEVS FMLA policy.  As a result, you are **not approved** to return to work until an approved doctors note is provided.  At this time you are to **clock out of KRONOS**.  In the interim, while you are awaiting a response from your physician, please be advised that you are

3

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

eligible to apply for Sabbatical Leave, or Disability Leave, and may be eligible for Long Term Disability if applicable.  Information relative to leaves can be obtained in the Collective Bargaining Agreement (which I've attached for your convenience).   Let me know if there are questions."

(u) On June 7, 2022, in a response email to Highsmith, copying Silva, Liz Curcio Griscom, Senior Human Resources Manager, and Phil Johnson, Union Representative, I stated: "After speaking with Nicole Clark this morning she stated that she would fax the required additional documentation to my doctor's office. (as per the request on the Dr. note for additional information). She said that she would send a message when it was faxed. (I have not received that it was completed) I will follow up with my doctor's office to see if the documentation was sent and when I should receive a note back.  Also I would like to confirm that you were aware of the hours worked on 6/6/2022, though the documentation below states that I am now, not approved to work as of mid-day today. I would like more information about my other options as far as the sabbatical leave and disability, can you assist in which team will be best to answer those questions."

(v) On June 7, 2022, in a response email from Highsmith, she confirmed that I worked and would be paid for June 6 and 7, 2022, and provided information regarding Respondent's leave policies.

(w) On June 16, 2022, in an email to Silva, Mehler, Highsmith, and Woods, copying Phil Johnson, Union Representative, I attached my doctor's note dated June 16, 2022, provided a summary of the above events, and stated the following: "I was told that the company would not grant my accommodation request to work remotely, so I needed to go out of work on an unpaid leave of absence. I do not understand why I am not permitted to work remotely as accommodation for my pregnancy and underlying medical conditions. I am attaching my most recent doctor's note and again requesting the reasonable accommodation of working remotely due to my pregnancy and medical conditions."  My doctor's note stated that I was thirty-one (31) weeks pregnant with an expected delivery date of August 17, 2022 and requested that I be allowed to work remotely.

(x) I received no response to my above email and request for a reasonable accommodation.

(y) On June 21, 2022, in an email to Silva, I requested an update in response to my email above and request for a reasonable accommodation.

(z) On June 21, 2022, following the above, in an email from Highsmith, copying Silva, Mehler, Woods, Johnson, Latasha Beckton, Senior Human Resources Manager, and Teneika Brown, Case Coordinator, she stated the following: "Effective June 22, 2022 you are being notified that you are approved to temporarily work remotely in the capacity of CAO Liaison. Please be advised that an updated doctors note must be provided to your supervisor with a copy to me in 30 days which will be **7/22/2022**. The doctors note must be specific as it relates to the reason and duration for continued remote work accommodation. You are to punch into KRONOS, connect with your supervisor as to work assignments daily in accordance with established Work Ready procedures. As you may be aware, Child Rearing and Sabbatical Leave are provisions in the union contact. I've attached a copy for your convenience. Once the temporary accommodation for remote work request has expired, you may want to make inquiry of those leaves you are eligible to utilize. At this time, the position has not been identified as a remote position and your accommodation is temporary based upon the needs of the program and your current health condition."

4

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

(aa) On June 22, 2022, I returned to work with the accommodation of working remotely full time.

(bb) On June 27, 2022, in an email from Highsmith, she stated: "Your [reasonable accommodation] request will be reviewed monthly as the program accesses its business needs. As you are aware, your FMLA eligibility exhausted." This was false, as I had FMLA hours remaining as of June 27, 2022.

(cc) On July 15, 2022, in an email to Silva and Highsmith, I submitted my doctor's note, stating that I was thirty-five (35) weeks pregnant, with an expected delivery date of August 17, 2022, and requesting the reasonable accommodation of continuing to work remotely full time.

(dd) On July 18, 2022, in an email from Rishenna Gaskins, Leave of Absence Administrator, Human Resources, she stated that she received my doctor's note and would fax additional paperwork for my doctor to complete.

(ee) On July 19, 2022, in an email from Highsmith, copying Silva and Mehler, she stated that Respondent "approved this temporary continued remote accommodation request until [my] confirmed expected delivery date of 8/17/2022 which is identified in the doctor's note. As of 8/17/2022, unless [my] delivery is sooner, the approved remote accommodation approval will end."

(a) On August 16, 2022, in an email to Silva, Highsmith, and Gaskins, I stated the following and attached my updated doctor's note: "Please see the updated document attached. It's my most recent doctor's note for temporary remote work. My due date is 8/17/2022 but just in case he doesn't arrive tonight, I would like to continue to work until the day I deliver." My doctor's note stated the following: "[Alicia Phillip] is currently 35+ weeks pregnant with an expected delivery date of August 17, 2022. We ask that she continue to work remote until further notice- **with no restrictions until she delivers.** We request that you send - **our office official paperwork to be completed**."

(b) On August 22, 2022, in an email to Silva and Gaskins, I stated that I was in labor and would be starting my maternity leave that day.

(c) On August 22, 2022, I went out of work on maternity leave.

(d) On August 22, 2022, I gave birth.

(e) On October 24, 2022, in an email to Gaskins, copying Silva, Highsmith, and Gonzalez, I attached a copy of my doctor's note stating that I was cleared to return to work on October 25, 2022 with the reasonable accommodation of working remotely full time, due to my "weakened extremities and pelvis."

(f) On October 25, 2022, in an email from Gaskins, she stated that she had received my doctor's note and that I was cleared to return to work as of October 25, 2022.

(g) On October 26, 2022, in a text message from Silva, after I stated that I would begin working on October 27, 2022, she stated that my doctor's note was not approved. She stated that I needed to wait to begin working until Respondent "c[a]me up with a resolution."

(h) On October 26, 2022, following the above, in a text message to Silva, I forwarded the above email from Gaskins that I received on October 25, 2022, and stated that this was the email that I had received, allowing me to return to work. I asked if it was not

5

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

true.

(i)    On October 26, 2022, following the above, in a text message from Silva, she responded that, no, it was not true, and that my accommodation request to work fully remote had not been approved.

(j)    I received no further update from Respondent regarding my reasonable accommodation request.

(k)    On November 1, 2022, in an email to Gaskins, copying Silva, Highsmith, Gonzalez, and Beckton, I stated the following: "I am reaching out requesting an update for my status to start back working. My supervisor texted me and told me the above information [from Gaskins' October 25, 2022 email to me] was incorrect and that the accommodation requested was not approved and they needed to speak with HR and the union, this was told to me last Wednesday. I have yet to hear back from anyone. Can I please get an update so that I'll know when I'll be able to truly start working again."

(l)    On November 1, 2022, in a response email from Gaskins, she stated: "The accommodation approval for you to work from home will come from your manager and Sr HR manager.  Once they have made a decision, someone will reach back out to you."

(m)    On November 3, 2022, in a memo from Gonzalez to employees, Respondent stated that "remote work is not very sustainable," and that, "[i]f you are returning from an extended leave such as vacation, sick time or FMLA, you'll be expected to report to the office upon your return."  Respondent did not include anything regarding reasonable accommodations for a disability.

(n)    I received no further update from Respondent regarding my reasonable accommodation request.

(o)    On November 7, 2022, in an email to Gaskins, copying Silva, Highsmith, Gonzalez, and Beckton, I stated the following: "I still have not received confirmation, or any further communication, that I may return to work with the accommodation of working remotely, per my request and doctor's letter submitted on October 24. I am and have been ready to return to work full time, working remotely."

(p)    On November 7, 2022, following the above, in an email from Beckton, she stated: "I apologize for the delay while we are reviewing your current accommodation request.  I will give you a call tomorrow afternoon at 2:30pm to discuss."

(q)    On November 8, 2022, in an email to Beckton, copying Gaskins, Silva, Highsmith, and Gonzalez, I stated: "Thank you for responding I am currently at the hospital with my youngest son I will not be available for a call, can you please correspond via email and when I am able, I will respond thank you."

(r)    On November 10, 2022, I filed my first EEOC Charge and informed Respondent, via email to Beckton, copying Gaskins, Silva, Beckton, and Gonzalez, of the same, and attach a copy of my Charge to the email.

(s)    On November 10, 2022, in an email from Beckton, Respondent denied my reasonable accommodation request.  The email stated the following:

> After reviewing your accommodation requests and return to work note it has been determined that Work Ready cannot accommodate you

6

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

fully working remote 5 day per week. The program has funder requirements that have to be met that require all employees to work on-site at least twice per week.  At this current time there are two options that the agency can accommodate regarding your employment with Work Ready:

- You would need to submit a doctors note that allows you to return to work with no restrictions.

- Or you could elect to stay out on Union Disability leave until March 8, 2023.  If you elect to continue on Union Disability leave and your doctor clears you to return to work prior to March 8, 2023 without restrictions you will need to contact me via email.

(t)  On November 11, 2022, in an email to Beckton, copying Gonzalez, Silva, Gaskins, and Curcio Griscom, I stated the following:

[P]er my doctor, I am not able to go into the office and can only work remotely, which is why I am requesting the accommodation of working from home due my medical condition. I am able to do my job duties from home, which I had been doing before I went out on maternity leave. I am and will continue to be ready, willing, and able to work remotely; and that I believe that I am being discriminated against because of my underlying medical condition, my pregnancy and you're retaliating against me because I requested reasonable accommodations due to my underlying medical condition, pregnancy and when I went out on maternity leave.  Can you please confirm that you are stating that there is no accommodation that you are willing to give me in order for me to do my job, and that the only way that you will allow you to return to work is for me to be cleared by my doctor to return to work without restrictions and the ability to be in the office at least two days per week.

(u)  On November 15, 2022, in an email from Beckton, she stated the following:

The program need and requirement at this time is that employees report to the office two times per week. In my previous email below I informed you that based on the funder requirements and JEVS policy all employees are required to come into the office twice per week. Since your doctor's note only allows you to work remotely at this time the accommodating option that is you can remain out on leave until your leave time expires on March 8, 2023.

(v)  On November 15, 2022, following the above, in an email from Beckton, she stated the following:

Your request for accommodation was approved on June 22, 2022 prior to your FMLA expiring.  You were notified at that time that you were approved to temporarily work in a remote capacity as a CAO Liaison.  You were further notified that you would need to provided an updated doctors note to your supervisor and HR Manager in 30 days which was 7/22/2022.  You were informed that the doctors note needed to be specific as it related to reason and duration for continued remote work accommodation.

7

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

> Your FMLA expired on 8/25/22. At that time you were notified by our Leave of Absence Coordinator, Rishenna Gaskins that since you were unable to return to work after 8/25/22 when your FMLA expired, you were entitled to take additional time away from work without pay for up to 1 year through the Child Rearing leave starting from 8/25/22-3/8/23 per the union Collective Bargaining Agreement. The program need and requirement at this time is that employees report to the office two times per week.

(w)   Respondent failed to reasonably accommodate me for my pregnancy and/or disability.

(x)   Respondent failed to reasonably accommodate me for my pregnancy and/or disability because of my sex and/or pregnancy and/or disability and/or medical leave of absence and/or maternity leave and/or seeking reasonable accommodations in connection with my pregnancy and disability and/or my engaging in protected activity.

(y)   Respondent subjected me to a hostile work environment because of my sex and/or pregnancy and/or disability and/or medical leave of absence and/or maternity leave and/or seeking reasonable accommodations in connection with my pregnancy and disability and/or my engaging in protected activity.

(ff)   After I informed Respondent of my pregnancy and sought reasonable accommodations for my pregnancy and disability, I was treated differently and worse, and in a more hostile and dismissive manner, than male and/or non-pregnant and/or nondisabled employees and/or employees who had not sought reasonable accommodations and/or were not anticipating taking maternity leave were treated.

(z)   Respondent's sex, pregnancy, and disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

(aa)  Respondent did not target or treat in the same way similarly-situated male and/or noncomplaining and/or not recently pregnant and/or nondisabled employees and/or employees who had not sought reasonable accommodations for a disability or pregnancy.


B.   1.   Respondent's Stated Reasons

(a)   Respondent's stated reason for failing to reasonably accommodate me for my pregnancy and my disability is pretext for sex and/or pregnancy and/or disability discrimination and/or retaliation because of my medical leave of absence and/or maternity leave and/or seeking reasonable accommodations in connection with my pregnancy and disability and/or my engaging in protected activity.

(b)   Respondent provided no explanation for subjecting me to a hostile work environment because of my sex and/or my pregnancy and/or my disability and/or my seeking reasonable accommodations for my pregnancy and disability and/or my engaging in protected activity.

(c)   Respondent provided no explanation for failing to remedy or prevent the sex, pregnancy, and discrimination and retaliation against me.

8

**EEOC Charge of Discrimination
Initials of Charging Party –**


C.    1.    Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my sex (female), my pregnancy, and my disability, and retaliated against me based on my seeking reasonable accommodations for my disability and pregnancy and my engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO"), as set forth herein.

# Exhibit "3"

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market Street, Suite 1000
Philadelphia, PA 19107-3126
Email: PDOcontact@eeoc.gov
Website: eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

To:    Ms. Alicia Phillip
       ████████████████
       Clementon, NJ 08021

Re:  Ms. Alicia Phillip v. JEVS HUMAN SERVICES
     EEOC Charge Number: 530-2023-01154

EEOC Representative and phone:      Philadelphia Legal Unit, (267) 589-9707

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough
Mon Jul 17 00:00:00 EDT 2023

Karen McDonough
Deputy District Director